1    STEVEN J. FOSTER
2    4546 B-10 El Camino Real #413
3    Los Altos, CA 94022
     (303) 494-0932
4    Pro Se Plaintiff

**FILED**

JUN 09 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5              **UNITED STATES DISTRICT COURT**
6
7                   Northern District of California

                                            C17-2122 JSW
8                                   Case No.  4:cv-02122-JSW
9    Steven J. Foster,
              Plaintiff,
10
11       v.                         **PLAINTIFF'S OPPOSITION TO**
                                    **MOTION TO DISMISS OF**
12                                  **DEFENDANTS STATE BAR OF**
     State Bar of California,  et. al.,   **CALIFORNIA, et. al., AND TO**
13            Defendants         **MOTION TO DISMISS OF**
14                                  **DEFENDANTS JUSTICES OF THE**
15                                  **CALIFORNIA SUPREME COURT**
16
17                                  Date: July 21, 2017
                                    Time: 9:00 a.m.
18                                  Dept:  Courtroom 5, 2nd Floor
19                                  Judge: Honorable Jeffrey S. White
                                    Trial Date: Not Set
20                                  Action Filed: April 17, 2017
21
22
23
24
25
26
27
28

1

2

# Table of Contents

I. Introduction..................................................................................1

II. Standard Of Review......................................................................1

III. California Disciplinary System Does Not
    Adequately Protect Constitutional Rights......................................2

IV. Eleventh Amendment Immunity Does Not Bar This Suit............................13

V. Justiciability - This Case Is Ripe For Review.................................15

    A. No Requirement Of An Ongoing Disciplinary Proceeding................15

    B. Prudential Ripeness Does Not Bar This Suit..........................16

VI. Justiciability - Foster Has Standing.............................................21

VII. No Grounds Exist For Abstention..................................................21

VIII. Prior Case Law Is Not Dispositive................................................21

Conclusion.....................................................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court                    Case No.  4:cv-02122-JSW

# Table of Authorities

## Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)
abrogated by *Califano v. Sanders*, 430 U.S. 99 (1977).................................17

*Agua Caliente Band of Cahuilla Indians v. Hardin*,
223 F.3d 1041, 1045 (9th Cir. 2000).................................................13

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*................................16

*Buono v. Kempthorne*, 527 F.3d 758, 777 (9th Cir. 2008),
rev'd and remanded *sub nom. Salazar v. Buono*, 559 U.S. 700 (2010)....................19

*Califano v. Sanders*, 430 U.S. 99 (1977)...............................................16

*Canatella v. California*, 304 F.3d 843 (9th Cir. 2002)...................................15

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)........................8

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)....................................7

*Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO,
2017 WL 1459081, at *20 (N.D. Cal. Apr. 25, 2017)..............................18, 19

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986)..........................................10

*Dep't of Mental Hygiene of Cal. v. Kirchner*, 380 U.S. 194 (1965)........................10

*England v. La. State Bd. of Med. Examiners*, 375 U.S. 411 (1964)..........................4

*Ex Parte Young*, 209 U.S. 123, (1908)...............................................13, 14

*Green v. Mansour*, 474 U.S. 64 (1985)..................................................14

*Hipolito v. State Bar*, 770 P.2d 743 (1989)..........................................4, 16

*Hirsh v. Justices of the Supreme Court of State of Cal.*, 67 F.3d 708 (9th Cir. 1995)..22

*Honeyman v. Hanan*, 300 U.S. 14 (1937).................................................13

*In re Attorney Discipline System*, 967 P.2d 49 (1998)...................................12

*In re Rose*, 993 P.2d 956 (2000).................................................3, 10, 19

*Johnson v. Williams*, 568 U.S. 289 (2013)..............................................10

ii

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

*King Iron Bridge & Mfg. Co. v. Cty. of Otoe*, 120 U.S. 225, 225 (1887)...11

*Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).........................................2

*Mathews v. Eldridge*,  424 U.S. 319 (1976).................................................................22

*Matter of Foster*, No. 10-J-03762,
2014 WL 4412395, at 4 (Cal. Bar Ct. Sept. 5, 2014)........................................8

*Matter of Respondent U*, No. 92-O-14726,
1995 WL 405060, at *6 (Cal. Bar Ct. July 6, 1995).......................................8, 12

*Michigan v. Long*, 463 U.S. 1032 (1983)....................................................................4

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)..21

*N.A.A.C.P. v. Button*, 371 U.S. 415 (1963)................................................................11

*Nat'l Ass'n for Advancement of Multijurisdiction
Practice v. Berch*, 973 F. Supp. 2d 1082, 1094 (D. Ariz. 2013),
aff'd sub nom. *Nat'l Ass'n for the Advancement of
Multijurisdiction Practice v. Berch*, 773 F.3d 1037 (9th Cir. 2014).........................16

*Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 264, (1933)..............................8

*Oklevueha Native Am. Church of HI, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012)..18

*Quern v. Jordan*, 440 U.S. 332, (1979).......................................................................15

*Rapp v. Disciplinary Bd. of HI Supreme Court*, 916 F.Supp. 1525 (1996)...............15

*Rosenthal v. Justices Supreme Court of State of Cal.*, 910 F.2d 561 (9th Cir. 1990)..22

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)......................1

*Salt River Project Agr. Imp. and Power Dist. v. Lee (SRP II)*,
672 F.3d 1176 (9th Cir. 2012)..............................................................................15

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*,
343 F.3d 1036, 1051 (9th Cir. 2003).....................................................................1

*Scheer v. Kelly*, 817 F.3d 1183 (2016).......................................................................15

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014).......................................16, 18

*Taylor v. Louisiana*, 419 U.S. 522 (1975)....................................................................5

*Trapper v. North Carolina*, 451 U.S. 997, 997  (1981)................................................8

iii

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

*U.S. v. Kras*, 409 U.S.434 (1973)...................................................................9

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)....................16

*Washington v. Davis*, 426 U.S. 229 (1976)...................................................5

*Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016)..................................11, 22

*Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)..............................1

**Statutes**

Federal Statutes

28 U.S.C. 1331.............................................................................................13

42 U.S.C. § 1983...........................................................................................1

California Statutes

Business and Professions Code

§6049.1...............................................................................................passim

§6079.1........................................................................................................2

**Rules**

Federal Rules of Civil Procedure

12(b)1 and 12(b)6.........................................................................................1

Rules of Procedure of the State Bar

Rules 5.350 to 5.354....................................................................................14

Rule 9.61....................................................................................................2, 9

California Rules of Professional Conduct

Rule 3-300...................................................................................................16

Colorado Rule of Professional Conduct

Rule 1.8(a)...................................................................................................16

**U.S. Constitutional Provisions**

Eleventh Amendment..........................................................................13, 14, 15

Fourteenth Amendment.................................................................................passim

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,   Case No.  4:cv-02122-JSW
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Using two separate motions based on F.R.C.P. 12(b)(1) and 12(b)(6), defendants moved to dismiss this 42 U.S.C. § 1983 action on various grounds.  Defendants Justices of the California Supreme Court filed a separate motion to dismiss and joined in the motion to dismiss filed by the Office of General Counsel who represents all other defendants, namely the State Bar of California, the Judges of the State Bar Court, and David Pasternak.  Although the motion of the Justices of the California Supreme Court never arrived in the manner described in the certificate of service, the parties stipulated to extended briefing dates for this opposition to the motions (June 9, 2017) and for any reply to the opposition (June 23, 2017).  The parties also stipulated to the filing of a single opposition addressing both motions.

## II. Standard Of Review

A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). A court addressing a facial attack must confine its inquiry to the allegations in the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1051 (9th Cir. 2003).  The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6) by accepting the plaintiff's allegations as true, drawing all reasonable inferences in the plaintiff's favor, and then determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Here defendants bring a facial attack to the allegations in the complaint.  Accordingly, all allegations in the complaint must be taken as true and all reasonable inferences must be drawn

- 1 -

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

1    from such allegations.

2    **III.  California Disciplinary System Does Not Adequately Protect Constitutional Rights**

3                The administrative structure for imposing attorney discipline is a unified structure

4    with a common purpose.  At the top of the structure sits the California Supreme Court (the "CA

5    Supreme Court") which has repeatedly held that it exercises exclusive power over attorney

6    discipline.  The two other participants in the disciplinary process are the State Bar Court and the

7    State Bar of California, both of which operate as instrumentalities of the CA Supreme Court.

8    They all share the common purpose of establishing culpability for ethical violations and then

9    imposing appropriate sanctions.

10          As defendants point out, the agency named the "State Bar Court" is a non-judicial

11   administrative arm of the California Supreme Court.   To distinguish the "State Bar Court" from

12   a court where judges have judicial power, such as a federal District Court, the State Bar Court

13   will be referred to here as the Disciplinary Panel.   The Disciplinary Panel consists of two

14   departments.  One oversees the initial presentation by the State Bar and the accused attorney

15   and the other reviews the recommendations arising from the initial presentation.  The two

16   departments are commonly referred to as the Hearing Department and the Review Department,

17   respectively.

18

19          The individuals who sit on the Disciplinary Panel, commonly referred to as "judges" of the

20   State Bar Court, are non-judicial officers that are appointed periodically by the California

21   Supreme Court.  (Ca. Business and Professions Code §6079.1, Rules of Procedure of the State

22   Bar, rule 9.61 (hereinafter simply "Rule")  To distinguish a "judge of the State Bar Court" from

23   a judge with judicial power granted by the California constitution, a State Bar Court judge will

24   be referred to here as a Panel Member.

25          Panel Members cannot issue orders beyond those that control the proceedings before them.

26   For example, while a Panel Member can refuse to admit evidence or refuse to permit discovery,

27   a Panel Member cannot issue an order that is enforceable upon the accused attorney.  Rather, in

28   matters other than how the presentation is conducted, a Panel Member may only make advisory

-2-

1  recommendations to the CA Supreme Court.  All enforceable orders are orders of the CA

2  Supreme Court.

3  Disciplinary charges are presented to the Disciplinary Panel by attorneys who work for the

4  State Bar of California (the "State Bar").  The State Bar is subject to the "expressly reserved,

5  primary and inherent regulatory authority over attorney discipline" of the CA Supreme Court.

6  *In re Rose*, 993 P.2d 956, 964 (2000)

7  The complaint alleges that Foster does not have the right to present constitutional claims in

8  a court of general jurisdiction in California.  Complaint ¶37.  The complaint alleges that the

9  Panel Members determine the record created by the Disciplinary Panel by determining and

10  controlling, among other things, the scope of the trial, what evidence is admissible, the

11  credibility of witnesses, and all aspects of what Foster can do to advance his arguments and to

12  document the proceedings.  Complaint ¶33.  The complaint alleges that the Panel Members are

13  barred from ruling on Foster's constitutional claims and that they can only provide advisory

14  reports to the CA Supreme Court.  Complaint ¶33.  The complaint alleges that because Panel

15  Members cannot rule on constitutional claims, they lack expertise and experience to ensure

16  Foster's constitutional arguments are completely and accurately preserved in the proceedings.

17  Complaint ¶34.

18

19  The problems associated with the lack of expertise in a particular area of law were

20  addressed in *Michigan v. Long*, 463 U.S. 1032 (1983).  There the Court stated that "[t]he process

21  of [Supreme Court Justices] examining state law is unsatisfactory because it requires us to

22  interpret state laws with which we are generally unfamiliar, and which often, as in this case,

23  have not been discussed at length by the parties." *Long*, 463 U.S. at 1039.  Just as U.S.

24  Supreme Court Justices are unfamiliar with state law, Panel Members are unfamiliar with the

25  cases interpreting the U.S. Constitution.  Consistent with that, it is a constitutionally

26  unsatisfactory structure to require an accused attorney to present his case to a Disciplinary Panel

27  composed of Panel Members who are generally unfamiliar with the merits of the constitutional

28  arguments being presented by the attorney.

- 3 -

It is of critical importance to have factual and legal issues decided by a judge with expertise. As pointed out in *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964):

> But such review [from an appeal of a state court decision], even when available by appeal rather than only by discretionary with of certiorari, is an inadequate substitute for the initial District Court determination—often by three judges, 28 U.S.C. §2281—to which the litigant is entitled in the federal courts. This is true as to issues of law; it is especially true as to issues of fact. **Limiting the litigant to review here would deny him the benefit of a federal trial court's role in constructing a record and making fact findings.** How the facts are found will often dictate the decision of federal claims. 'It is the typical,  not the rare, case in which constitutional claims turn upon the resolution of contested factual issues.' *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770. 'There is always in litigation a margin of error, representing error in fact finding * * *.' *Speiser v. Randall*, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. **Thus in cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the District Court, a litigant may not be unwillingly deprived of that determination.** The possibility of appellate review by this Court of a state court determination may not be substituted, against a party's wishes, for his right to litigate his federal claims fully in the federal courts. We made this clear only last Term in *NAACP v. Button*, supra, 371 U.S., at 427, 83 S.Ct., at 335, 9 L.Ed.2d 405, when we said that 'a party has the right to return to the District Court, after obtaining the authoritative state court construction for which the court abstained, for a final determination of his claim. *England* 375 U.S. at 416-417 (Emphasis added)

By requiring that all disciplinary procedures take place before the Disciplinary Panel, Foster is deprived of the right to have his constitutional claims preserved in the record by a judge with the expertise to address and the authority to rule on such claims. This, as alleged, materially compromises the record developed by the Panel Members. Complaint ¶33.

While the stated purpose of the attorney disciplinary structure in California is to protect the public, the legal profession, and the courts (*Hipolito v. State Bar*, 770 P.2d 743 (1989), the effect of the attorney discipline structure, once it proceeds to the presentation stage where due process

-4-

1   is required, is to create a record supporting the imposition of discipline. Attorneys presenting a

2   defense before the Disciplinary Panel were found culpable of a disciplinary violation in over

3   98% of the recommendations made by the Disciplinary Panel to the CA Supreme Court. Of the

4   470 cases available on Westlaw in June of 2017 from the Review Department after 1990, only 6

5   involved situations where the attorney was not found culpable of an ethical violation. The CA

6   Supreme Court has never held to the contrary, i.e. that the attorney disciplinary process before

7   the Disciplinary Panel is neutral or even-handed as it leads to an eventual finding of culpability.

8      The presence of an established administrative practice can make unconstitutional an

9   otherwise facially valid statute.  An otherwise facially valid jury selection statute was held to be

10  unconstitutional in *Taylor v. Louisiana*, 419 U.S. 522, 525 (1975) because "in operation its

11  conceded systematic impact" of rarely having women on a jury violated a defendant's Sixth

12  Amendment right to a fair trial.  Similarly, a municipality who routinely failed to provide

13  training to its police officers was found to have violated due process since the consistent "failure

14  to train amounts to deliberate indifference to the rights of persons with whom [its employees]

15  come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

16     Because of the secrecy of the deliberative process within the CA Supreme Court, it is

17  impossible to obtain direct evidence on whether the CA Supreme Court reaches it decision to

18  deny a petition for review as part of an established administrative practice.  However,

19  circumstantial evidence can establish that proposition.  See *Washington v. Davis*, 426 U.S. 229

20  (1976) ("Frequently the most probative evidence of intent will be objective evidence of what

21  actually happened rather than evidence describing the subjective state of mind of the actor.  For

22  normally the actor is presumed to have intended the natural consequences of his deeds.")

23  *Washington* 426 U.S. at 253. Justice Stevens concurring.  The complaint in paragraphs 34 and

24  35 alleges that the CA Supreme Court's records show it has denied all petitions for review since

25  1997, and that this is evidence of an established administrative practice to deny all petitions for

26  review arising from Disciplinary Panel presentations.

27     The first two steps in the attorney discipline structure in California can be compared to the

28

- 5 -

operation of the police and prosecution of an arrest.  Similar to the State Bar in matters concerning discipline, the police carry out the important public duties of ensuring public safety and preventing crime.  Assume an individual is arrested under the suspicion of having committed a crime such as vandalism.  The police officer would write a report stating the basis for the arrest which report would eventually make it to the district attorney.  The district attorney, like an attorney of the State Bar, has a duty to see that the laws of the state are enforced.  When the arrested person appears before a court to hear the charges and receive a trial date, the arrested person stands in the same position as an attorney who received the Notice of Disciplinary Charges written by the State Bar.

It is the next steps where that the two processes differ in a manner the bears upon the due process violations. (throughout "due process" is Fourteenth Amendment due process)  When the arrested person's trial is concluded, the trial court judge writes an opinion which is capable of review and which opinion may be appealed if the process was fundamentally unfair or if the law was improperly applied.  California institutions are organized such that a trial court judge is separate and independent from the police department and the district attorney.  Accordingly, the judge is entitled to a presumption of neutrality in the manner in which the arrested person's trial is conducted and the law is applied.

When the Disciplinary Panel proceeding is concluded, only an advisory recommendation is written by the Disciplinary Panel and, for the first time, the matter is presented to a judicial authority, here the CA Supreme Court.  Following presentation of the advisory recommendation to the CA Supreme Court, if no action is taken by the accused attorney or if the petition for review of the Disciplinary Panel advice is requested but review is not undertaken by the CA Supreme Court, just those portions of the advisory recommendation concerning culpability and the appropriate level of discipline become the judicial decision of the CA Supreme Court.  Since both the State Bar and the Disciplinary Panel have as their purposes the enforcement of discipline, and since both the State Bar and the Panel Members are instrumentalities of the CA Supreme Court, the CA Supreme Court receives a recommendation to find culpability and

- 6 -

1   impose discipline in essentially all cases arising from a Disciplinary Panel proceeding. At this

2   point in the process, it is as if the arrested person's criminal trail consisted solely of the district

3   attorney providing the trial court judge with written recommendations of conviction and penalty,

4   and the trial court judge asked the arrested person whether he wanted to submit written

5   objections to the recommendations of the district attorney.  In the California disciplinary

6   process, the "written objections" take the form of a petition for review submitted by the

7   attorney.

8          Challenges to the California disciplinary system based on the U.S. Constitution are

9   completely shielded from review by a federal court, unless those challenges can initially be

10  raised in the federal court system. This walling off of judicial review constructed by the CA

11  Supreme Court does not exist with cases that proceed through the California judicial system.  A

12  party to a civil or criminal proceeding in California can raise violations of the U.S. Constitution

13  during his trail and can continue to raise those issues through appeals all the way to the U.S.

14  Supreme Court. An attorney cannot initiate a civil proceeding in the California judicial system

15  that raises constitutional challenges to the California disciplinary system, since, along with state

16  law justiciability issues, the CA Supreme Court has retained for itself exclusive authority over

17  attorney discipline,  and the CA Supreme Court does not permit original proceedings concerning

18  the disciplinary system.

19

20         As a matter of law, an attorney cannot obtain U.S. Supreme Court review of a denial of a

21  petition for review by the CA Supreme Court. This undermines the constitutional purpose of

22  the federal court system.    See *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 264, (1933)

23  (Whenever the judicial power is invoked to review a judgment of a state court, the ultimate

24  constitutional purpose is the protection, by the exercise of the judicial function, of rights arising

25  under the Constitution and laws of the United States.)  When a petition for review of an

26  advisory recommendation from the Disciplinary Panel is denied by the CA Supreme Court, as is

27  alleged to be the established administrative practice of the CA Supreme Court (Complaint ¶¶ 34,

28  35), there can be no federal court jurisdiction over the denial.  For jurisdiction to exist in the

- 7 -

1   U.S. Supreme Court, there must be either diversity jurisdiction (which there can never be since

2   the parties are both in California) or federal question jurisdiction.  Although an attorney may

3   raise federal questions in his petition for review, a petition for review that is denied by the CA

4   Supreme Court does not incorporate those grounds into the basis of decision by the CA

5   Supreme Court.

6      Federal questions related to violations of rights granted by the U.S. Constitution cannot be

7   preserved by the attorney in his disciplinary presentation, determined by the Panel Members, or

8   be anything beyond dicta in the advisory recommendation passed on to the CA Supreme Court.

9   As was previously stated by the Panel Members in Foster's prior disciplinary case, "Most

10  importantly, we are without jurisdiction to consider Foster's constitutional challenges to section

11  6049.1 since we are affirming the hearing judge's order of public reproval, which does not

12  require the Supreme Court's approval".  *Matter of Foster*, No. 10-J-03762, 2014 WL 4412395,

13  at 4 (Cal. Bar Ct. Sept. 5, 2014).  Similarly, "We agree that the State Bar Court does not have

14  the power to declare a statute unconstitutional,..." *Matter of Respondent U*, No. 92-O-14726,

15  1995 WL 405060, at *6 (Cal. Bar Ct. July 6, 1995).  Certiorari jurisdiction of the U.S. Supreme

16  Court is accordingly effectively eliminated.  See *Trapper v. North Carolina*, 451 U.S. 997, 997

17  (1981) ("...institutional constraints totally preclude any possibility that this Court can

18  adequately oversee whether state courts have properly applied federal law.")  Justice Brennan

19  dissenting.

20

21     Federal question jurisdiction is also precluded, as a matter of law, because the act of denial

22  of a petition for review that results in a finding of culpability and the imposition of discipline

23  can be made by looking solely to California law.  The fact that an alternative theory of relief

24  exists for each claim alleged in the complaint, one not dependent upon federal law, is itself

25  grounds to defeat federal question jurisdiction. See *Christianson v. Colt Indus. Operating Corp.*,

26  486 U.S. 800 (1988).

27     This barrier legally constructed in California to prevent the finding of a federal question

28  that would support review of the attorney discipline process by the U.S. Supreme Court is

- 8 -

1  fortified by the fact that, when a petition for review is denied, there is no written opinion by the
2  CA Supreme Court for analysis in the U.S. Supreme Court and there are no legal "theories" that
3  are pronounced by the CA Supreme Court.   The complaint alleges that no reasons are ever
4  given for denial of a petition for review.  Complaint ¶35.  In the prior disciplinary proceeding
5  involving Foster, the entire order of the California Supreme Court that resulted in the
6  determination of culpability and imposition of sanctions consisted of the following single
7  sentence: "The petition for review is denied."

8      The effect of that one sentence denial has been limited by the CA Supreme Court in its
9  procedural rules for the Disciplinary Panel and cases so as to obscure the legal basis for the
10  order. Per Rule 9.16(b), "Denial of review of a decision of the State Bar Court is a final judicial
11  determination on the merits and the recommendation of the State Bar Court will be filed as an
12  order of the Supreme Court."  But the "order of the Supreme Court" does not cause the legal
13  reasoning of the Disciplinary Panel advisory recommendation to be the legal reasoning of the
14  CA Supreme Court. The CA Supreme Court's denial of review of a decision by Disciplinary
15  Panel "...does not render State Bar Court's decision "final," because such a decision [of the State
16  Bar Court] simply constitutes a recommendation regarding the ultimate discipline to be imposed
17  by Supreme Court..." *In re Rose* 993 P.2d at 964.   "...[O]rders denying petitions for review in
18  ordinary civil and criminal cases — have no precedential value..."  *In re Rose* 993 P.2d at 970.
19  See also *U.S. v. Kras*, 409 U.S.434 (1973)  (A denial of certiorari normally carries no
20  implication or inference.)   Indeed, the only aspect that can be said to be legally "determined"
21  by the CA Supreme Court when it denies a petition for review is "that the recommended
22  discipline should be imposed."   As observed by Justice Scalia, one sentence rejections of cases
23  are evidence of the lack of judicial review of the case.  *Johnson v. Williams*, 568 U.S. 289, 133
24  (2013) ("Decided after due consideration" is not, and has never been, the meaning of the legal
25  term of art "decided on the merits.")   Justice Scalia, concurring in the judgment. As the CA
26  Supreme Court itself stated:

27      **Even if an attorney raises an important question of law** or presents a

- 9 -

prima facie claim of legal or factual error, we properly may deny review if our independent examination of the record and evaluation of the attorney's factual and legal assertions establish that the recommended discipline should be imposed. *In re Rose*, 993 P.2d at 976 (2000) (Emphasis added)

By creating an inability for the U.S. Supreme Court to identify the legal basis for the CA Supreme Court's imposition of discipline, the CA Supreme Court has positioned itself safely within the anti-federal review borders of *Dep't of Mental Hygiene of Cal. v. Kirchner,* 380 U.S. 194 (1965). There the U.S. Supreme Court held:

**An examination of the opinion** of the California Supreme Court in the case before us **does not indicate** whether that court relied on the State Constitution alone, the Federal Constitution alone, or both; and **we would have jurisdiction to review only if the federal ground had been the sole basis** for the decision, or the State Constitution was interpreted under what the state court deemed the compulsion of the Federal Constitution. *Kirchner* 380 U.S. at 1998. (Emphasis added)

By not indicating what legal reasoning was relied on by the CA Supreme Court in its one sentence order denying review of a petition, the CA Supreme Court via *Kirchner* prevents review by the U.S. Supreme Court unless the the U.S. Supreme Court were to hold that "sole basis" for imposing discipline in California was a federal law. That finding is impossible. See *Delaware v. Van Arsdall*, 475 U.S. 673, 698 (1986) ("When the state-court decision to be reviewed is ambiguous, and it is not even clear that the judgment rests on a federal ground, the basis for exercising jurisdiction is even less tenable.") Justice Stevens, dissenting; *King Iron Bridge & Mfg. Co. v. Cty. of Otoe,* 120 U.S. 225, 225 (1887) (From the nature and limits of judicial power of the United States, [it] is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction,...in all cases where such jurisdiction does not **affirmatively appear in the record** on which, in the exercise of that power, it is called to act) (Emphasis added)

In addition to blocking review by the federal courts through use of a one sentence order where the legal basis for the order is uncertain, the CA Supreme Court utilizes its own

-10-

1  prosecutorial administrative agencies, the State Bar and the Disciplinary Panel, to create a

2  collection of documents that it considers the record in the proceeding. However, unlike the

3  record in a typical civil proceeding, an attorney cannot challenge the denial of his petition for

4  review because the one sentence order of the CA Supreme Court was not supported by the

5  record, since, as the CA Supreme Court has stated, its one sentence order is based on its

6  "independent examination," which, of course, is done in secret. The writing that the Panel

7  Members pass on to the CA Supreme Court at the conclusion of a presentation before the

8  Disciplinary Panel is a bare recommendation and nothing more. Because that writing is not a

9  legal opinion whose reasoning can be challenged by the accused attorney, the attorney cannot

10  argue that the reasoning was not supported by the record.

11

12       Where the ultimate judicial decision and order are made in secret, and are made within an

13  structure where there is a connection between the prosecutorial function and the judicial

14  function, due process concerns require the state to show more than a rational basis for how and

15  why the judicial decision is made. In *Williams v. Pennsylvania,* 136 S.Ct. 1899 (2016) the

16  Court analyzed the due process violation arising from an overlap between the charging

17  authority, the Pennsylvania attorney general's office, and the judicial authority, the Pennsylvania

18  Supreme Court. It characterized the problem as "structural error" and the confidentiality of the

19  "appellate panel's deliberations" as part of the structural problem. *Williams* 136 S.Ct at 1902.

20  While the facts of *Williams* are distinguishable from those in the complaint, there is a

21  comparable structural error in the California attorney disciplinary system. As defendants point

22  out, the State Bar is the charging authority for attorney discipline in California, and the State

23  Bar is an administrative arm of the CA Supreme Court, the judicial authority that controls the

24  Disciplinary Panel procedures and appoints its Panel Members.

25       No legitimate state purpose is served when the CA Supreme Court uses agencies under the

26  control and supervision of the CA Supreme Court to control the administrative record that

27  becomes the recommendation of the Disciplinary Panel to the CA Supreme Court. Irrespective

28  of how traditional it is for state courts to regulate attorney conduct, the CA Supreme Court

- 11 -

1   under the guise of regulating the legal profession, may not ignore constitutional rights. See

2   *N.A.A.C.P. v. Button*, 371 U.S. 415 (1963).  With respect to using its own agencies to prosecute

3   disciplinary cases and dispatch with constitutional claims, the CA Supreme Court justifies this

4   solely on the basis of economics.  *In re Attorney Discipline System*, 967 P.2d  49, 60 (1998)

5   ("[T]his court has been able to reduce considerably its resources devoted to overseeing the

6   [attorney disciplinary] process, and instead has relied upon the professionalism and consistency

7   generated by the revised process, particularly that achieved by the newly created State Bar

8   Court.) *Matter of Respondent U*, No. 92-O-14726, 1995 WL 405060, at *7 (Cal. Bar Ct. July 6,

9   1995) ("In fact the savings of Supreme Court time dealing with meritless constitutional

10   arguments is illustrated by *In the Matter of Frazier*, supra, in which the respondent sought

11   review of the review department's opinion analyzing and rejecting Frazier's due process attacks

12   on the hearing referee's decision. The Supreme Court summarily denied review and adopted the

13   review department's recommendation of three years' actual suspension by a one page order

14   dated June 15, 1992.")

15

16      Federal court jurisdiction can never be had for so long as the CA Supreme Court controls

17   the record in a disciplinary proceeding so that federal questions are never addressed.  As

18   previously discussed, the Panel Members are without jurisdiction to address federal

19   constitutional questions, even if those questions are raised by the attorney.  The critical

20   importance of the state court record as it bears upon federal question jurisdiction was addressed

21   the the U.S. Supreme Court in *Honeyman v. Hanan*, 300 U.S. 14 (1937).  There the Court held:

22        Before we may undertake to review a decision of the court of a State it must
23        appear affirmatively from the record, not only that the federal question was
           presented for decision to the highest court of the State having jurisdiction **but**
24        **that its decision of the federal question was necessary to the determination**
25        **of the cause.** *Lynch v. New York*, 293 U.S. 52, 54, 55 S.Ct. 16, 17, 79 L.Ed.
           191, and cases there cited. Whether these requirements have been met is itself a
26        federal question. As this Court must decide whether it has jurisdiction in a
27        particular case, this Court must determine whether the federal question was
28        necessarily passed upon by the state court. **That determination must rest**

- 12 -

1
2
3
4
5

**upon an examination of the record.** A certificate or statement by the state court1 that a federal question has been presented to it and necessarily passed upon is not controlling. While such a certificate or statement may aid this Court in the examination of the record, it cannot avail to foreclose the inquiry which it is our duty to make or to import into the record a federal question which otherwise the record wholly fails to present. *Honeyman*, 300 U.S. at 18-19. (Emphasis added)

6
7
8
9
10
11

Thus, under *Honeyman*, there will never be federal question jurisdiction associated with a California disciplinary decision, since the "record" associated with the denial of a petition for review will never affirmatively show that the CA Supreme Court based the imposition of discipline on the a violation of the United States Constitution, federal law, or a treaty to which the United States is a party.  See 28 U.S.C. 1331.

12
13
14
15
16
17
18

    In summary, when it denies a petition for review, the CA Supreme Court thoroughly covers its tracks.  It intentionally leaves no written opinion on which the U.S. Supreme Court could find the existence of a federal question upon which to base federal court jurisdiction.  This, as a matter of law, ensures that, when in a disciplinary proceeding in California, the rights guaranteed to an attorney by the U.S. Constitution cannot be safeguarded by federal court review.  Consequently, the attorney disciplinary proceedings in California do not provide an adequate forum for the protection of constitutional rights.

19

## IV. Eleventh Amendment Immunity Does Not Bar This Suit

20
21
22
23
24
25
26
27
28

    Although Eleventh Amendment immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. *Ex Parte Young*, 209 U.S. 123, (1908); see also *Quern v. Jordan*, 440 U.S. 332, (1979); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). The *Ex Parte Young* doctrine allows individuals to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief. *Green v. Mansour*, 474 U.S. 64, 68–71 (1985).

- 13 -

1      The complaint alleges, and the defendants agree, that defendants use California Business

2 and Professions Code §6049.1 (hereinafter "§6049.1") and Rules 5.350 to 5.354 when it

3 disciplines attorneys in California after the same attorney has been disciplined in another

4 jurisdiction.  Complaint ¶¶ 18-27. This practice of relying on an order of discipline from another

5 jurisdiction is generally referred to as "reciprocal discipline" in contrast with the an "original

6 proceeding" where defendants must follow an entirely different and broader procedural process

7 that, among other items, places the burden of proof on defendants to establish the violation of an

8 ethical code and does not limit the manner in which the accused attorney is able to defend

9 against the charges.   The complaint alleges that when defendants use reciprocal discipline

10 procedures, defendants are employing offensive collateral estoppel, and that the particular

11 manner in which offensive collateral estoppel is asserted in California disciplinary proceedings

12 under §6049.1 violates due process.  Complaint ¶¶ 26-31.

13      As previously set forth, the practice of the CA Supreme Court to use its controlled

14 agencies, the State Bar and the Panel Members, to prosecute disciplinary actions on which it is

15 the sole judicial authority is akin to structural error that prevents the Disciplinary Panel

16 proceedings from adequately safeguarding constitutional rights.  Further, when the State Bar

17 prosecutes using the expedited procedures of §6049.1, it uses a procedural scheme which

18 violates due process as an improper use of offensive collateral estoppel.

19      All defendants are named in their official capacities. The relief sought by the complaint is

20 wholly prospective and intended to act upon the defendants exercising their authority in their

21 official capacities.  No damages or retrospective relief is sought.  The complaint seeks

22 declarations that a §6049.1, which has been, is now, and will be in the future, used by defendants

23 in reciprocal discipline proceedings,  is unconstitutional on due process grounds and that the

24 attorney disciplinary system, which has been, is now, and will be in the future, administered

25 through the Disciplinary Panel does not provide an attorney with an adequate opportunity to

26 protect his constitutional rights.  The complaint also seeks injunctive relief preventing the

27 defendants from bring charges associated with the offending statute and using the Disciplinary

- 14 -

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

Panel to prosecute disciplinary charges. Consequently, the *Ex Parte Young*, exception to the Eleventh Amendment applies and the defendants are not entitled to Eleventh Amendment immunity. See *Canatella v. California*, 304 F.3d 843 (9th Cir. 2002) (suit allowed against State of California, State Bar of California, the State Bar Court, and the Office of the Chief Counsel of the State Bar); *Scheer v. Kelly*, 817 F.3d 1183 (2016) (suit allowed against the State Bar of California and State Bar Court); *Rapp v. Disciplinary Board of Hawaii Supreme Court*, 916 F.Supp. 1525 (1996) (suit allowed against the Disciplinary Board of the Hawaii Supreme Court and the Justices of the Hawaii Supreme Court); *Salt River Project Agr. Imp. and Power Dist. v. Lee (SRP II)*, 672 F.3d 1176 (9th Cir. 2012) (plaintiff could sue tribal officials, including Justices of the Navajo Nation Supreme Court for prospective injunctive relief under a routine application of *Ex Parte Young*)

## V. Justiciability - This Case Is Ripe For Review

Defendants allege that, in absence of an ongoing disciplinary proceeding, the issues are unripe concerning the constitutionality of §6049.1 and further allege that the disciplinary process in California adequately protects constitutional rights. The second allegation was previously discussed.

### A. No Requirement Of An Ongoing Disciplinary Proceeding

This Court has already rejected the requirement of an ongoing disciplinary proceeding as it pertains to ripeness. In *Canatella,* the Court held:

> While Canatella is not currently involved in disciplinary proceedings, it cannot be said that Canatella's fear of facing future disciplinary proceedings is "imaginative and wholly speculative." *Babbitt* 442 U.S. at 289, 99 S.Ct. 2301...We also believe that Canatella's claims do not arise in a factual vacuum and are sufficiently framed to render them fit for judicial decision.
> We also conclude Canatella and others in his position will be harmed absent a consideration of his claims. **We do not believe the challenge should be considered ripe only upon the initiation of disciplinary proceedings.** If, instead, we were to conclude that Canatella's claims are ripe only when based only on concluded disciplinary proceedings, Canatella would arguably be barred on a theory of mootness, or on the basis of *Rooker–Feldman.* "Ripeness is particularly a

- 15 -

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

1    question of timing," Assiniboine and Sioux Tribes of the Fort Peck Indian
2    Reservation v. *Board of Oil & Gas Conservation*, 792 F.2d 782, 788 (9th Cir.
3    1986), and there is no better time to entertain Canatella's claims than now.
     *Canatella,* 304 F.3d at 855.  (Emphasis added)
4

5        Here, the complaint alleges that an order of discipline for violating Colorado Rule of
6    Professional Conduct 1.8(a) has been entered against Foster by the appropriate authority in
7    Colorado, where Foster is also member of the Colorado bar.  The complaint alleges that
8    defendants have previously used §6049.1 in enforcing reciprocal discipline against Foster based
9    on an order of discipline from the same Colorado authorities.  The complaint alleges that
10   prosecution of Foster by defendants is imminent.  Complaint ¶¶ 8-17.

11       Prosecution of Foster by defendants under §6049.1 is imminent since (i) defendants bear
12   no burden of proof under §6049.1 that Foster has committed an ethical violation in California,
13   since §6049.1 contains a "conclusive evidence" standard that Foster is culpable of professional
14   misconduct in California; and (ii)  defendants have a duty to enforce disciplinary charges as part
15   of their mandate to protect the public, the legal profession, and the courts.  See *Hipolito v. State*
16   *Bar*, 770 P.2d 743 (1989); *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Berch*,
17   973 F. Supp. 2d 1082, 1094 (D. Ariz. 2013), aff'd sub nom. *Nat'l Ass'n for the Advancement of*
18   *Multijurisdiction Practice v. Berch*, 773 F.3d 1037 (9th Cir. 2014); *Ass'n des Eleveurs de*
19   *Canards et d'Oies du Quebec v. Harris*, 2013 WL 4615131, at *3 (under the *Ex Parte Young*
20   exception, the California Attorney General was not immune under the Eleventh Amendment
21   because she had the duty to prosecute any violations of the allegedly unconstitutional statute)
22   Defendants have not not suggested §6049.1 will not be enforced, and there no reason to assume
23   otherwise. See *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988).  As set forth in
24   *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2337 (2014),  "...the threat of future
25   enforcement is substantial. There is a history of past enforcement against petitioners. Past
26   enforcement against the same conduct is good evidence that the threat of enforcement is not "
27   'chimerical.' "  California Rule of Professional Conduct 3-300 is essentially identical to the
28

- 16 -

1   Colorado Rule 1.8(a), since both rules originated with Rule 1.8(a) of the Model Rules of

2   Professional Conduct.

3       The basic purpose of the ripeness doctrine is to prevent the courts, through avoidance of

4   premature adjudication, from entangling themselves in abstract disagreements over

5   administrative policies. *Califano v. Sanders*, 430 U.S. 99 (1977)  This case is ripe and fit for

6   judicial decision since it does not involve abstract disagreements between the parties and there

7   are no further events that could occur in the future to impact the rights of the parties.  The

8   allegations of the complaint demonstrate that there presently exists an imminent threat that

9   Foster will be prosecuted by defendants under §6049.1 and thereby be denied due process.

10      **B. Prudential Ripeness Does Not Bar This Suit**

11      Defendants argue that Foster's claims are not justiciable because they are not "prudentially

12  ripe."  As support for this, defendants assert that there is no injury to Foster because there is no

13  pending disciplinary proceeding.  As addressed in the general discussion of ripeness and is

14  alleged in the complaint at para. 18, the prospect of a disciplinary proceeding is virtually certain.

15  Defendants also assert there is no prudential ripeness because the defendants suffer the hardship

16  of defending the lawsuit whereas Foster suffers no hardship because he remains free to practice

17  

18  law.

19      Defendants arguments do not comport with the purposes of the prudential ripeness test.

20  This Court follows the criteria for prudential ripeness as articulated by the U.S. Supreme Court

21  in *Abbott Laboratories*.  There, the Court articulated the purpose behind the prudential ripeness

22  test as follows:

23      ...it is fair to say that its basic rationale [behind prudential ripeness] is to prevent
        the courts, through **avoidance of premature adjudication**, from entangling

24      themselves in abstract disagreements over administrative policies, and also to

25      protect the agencies from judicial interference until an administrative decision has
        been formalized and its effects felt in a concrete way by the challenging parties.

26      *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967) abrogated by

27      *Califano v. Sanders*, 430 U.S. 99 (1977) .  (Emphasis added)

28

- 17 -

1    This case involves a specific California statute, §6049.1, and the administrative system the

2    CA Supreme Court uses to identify and impose sanctions on attorneys for ethical misconduct.

3    The effect of §6049.1 and the administrative system have been experienced by Foster in a

4    concrete way, since, as alleged in the complaint at para. 12, Foster was previously subject to

5    monetary and related sanctions when the CA Supreme Court entered an order of discipline

6    against Foster based on a prior proceeding overseen by the Disciplinary Panel under §6049.1.

7    Accordingly, the jurisprudential purposes behind prudential ripeness are satisfied in this case.

8        Since *Abbot Laboratories*, this Court has recognized that the U.S. Supreme Court has

9    called into question "the continuing vitality of the prudential ripeness doctrine" and highlighted

10   that prudential ripeness is secondary to constitutional ripeness. *Cty. of Santa Clara v. Trump*,

11   No. 17-CV-00485-WHO, 2017 WL 1459081, at *20 (N.D. Cal. Apr. 25, 2017)  Once

12   constitutional ripeness is found, the U.S. Supreme Court has subordinated the prudential ripeness

13   inquiry to the overarching objective of the federal courts to provide a forum for resolving federal

14   questions.

> But we have already concluded that petitioners have alleged a sufficient
> Article III injury. To the extent respondents would have us deem petitioners'
> claims nonjusticiable "on grounds that are 'prudential,' rather than
> constitutional," "[t]hat request is in some tension with our recent reaffirmation
> of the principle that 'a federal court's obligation to hear and decide' cases
> within its jurisdiction 'is virtually unflagging.'" *Driehaus*, 134 S. Ct. at 2347

As previously discussed, constitutional ripeness exists in this case because there is a sufficient

Article III injury.  Any concerns related to prudential ripeness must give way to the necessity of

having a federal court resolve the issues in the complaint, especially since, as defendants argue,

access to the federal courts after a proceeding has begun in the California disciplinary system

would be potentially blocked due to *Younger* abstention.

In *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012),

this Court adopted reasoning consistent with *Driehaus*. For prudential ripeness to be

determinative of the justiciability issue, there must be some interest of the judiciary in delaying

-18-

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No. 4:cv-02122-JSW

consideration of a case. *Oklevueha Native Am. Church*, 676 F.3d at 838 ("As Plaintiffs' claims are fit for review now, we do not reach the second factor of the prudential ripeness inquiry— hardship to the parties in delaying review. Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case.") The present disciplinary system has been in place since the California legislature in 1988 directed the board of governors of the State Bar to establish the State Bar Court. *In re Rose*, 993 P.2d at 961. There is no judicial benefit in delaying consideration of the claims raised in the complaint when the statutes, Rules, and administrative system have continued without material change for almost 30 years. This is especially the case since, in conjunction with Foster's prior disciplinary action, discretionary review of the constitutionality of §6049.1 was rejected by the CA Supreme Court and the U.S. Supreme Court. There is no reason to believe that delay would cause those rejections to change.

Under defendant's analysis of prudential ripeness, all pre-enforcement claims made in federal court against the California attorney disciplinary system would be non-justiciable. So long as no charges are brought by the State Bar against the attorney, defendants allege the attorney suffers no hardship for prudential ripeness purposes. This permits the State Bar to withhold charging as a means to block access to the federal courts. If the State Bar decides to bring charges, it then blocks access to the federal courts by asserting *Younger* abstention. This indirect control over access to the federal courts was discussed and rejected by this court in *Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO, 2017 WL 1459081, at *20

> The "contingent future events" the Government identifies are always at issue in a pre-enforcement case; before actual enforcement occurs the enforcing agency must determine what the statute means and to whom it applies. Under the Government's line of reasoning, **virtually all pre-enforcement cases would be non-justiciable** on prudential ripeness grounds. But the possibility that the Government "may" choose to interpret the Order's broad language narrowly or "may" choose not to enforce it against the Counties does not justify deferring review. A decision to enforce it sparingly cannot impact whether it is unconstitutional on its face. The Counties' claims do not require further factual development, are legal in nature, and are brought against a final Executive Order. They are fit for review. (Emphasis added)

- 19 -

1    Where defendants advance a legal argument such that a dispute can never be ripe for federal

2    jurisdiction purposes, it should be rejected as being contrary to the purposes of prudential

3    ripeness.  See *Buono v. Kempthorne*, 527 F.3d 758, 777 (9th Cir. 2008), rev'd and remanded *sub*

4    *nom. Salazar v. Buono*, 559 U.S. 700 (2010) ("Under the government's construction, the dispute

5    would never be ripe...Such gamesmanship is not sanctioned by our prudential ripeness doctrine.)

6         Defendants argue they suffer hardship because they must defend against a "frivolous

7    lawsuit," yet defendants conclusory statement is unsupported by any description of what makes

8    the complaint legally frivolous.  Certainly, if there is a hardship in defending against a lawsuit,

9    there is a greater hardship in prosecuting a lawsuit to halt unconstitutional practices that have

10   persisted for over 30 years.   In any event, the type of hardship alleged by defendants will not

11   change if this Court delays consideration of the claims in the complaint.

12        There are additional hardships Foster faces.  If his claim is not heard in this Court, he will

13   lose access to the federal court system, because, among other reasons, it is impossible for a

14   California disciplinary decision to be decided on federal grounds only.  In other words, there will

15   never be federal question jurisdiction.  Foster also suffers hardship since he must constantly

16   evaluate whether his conduct in Colorado would subject him to the unconstitutional reciprocal

17   discipline process in California under §6049.1 where he is virtually certain to be found culpable

18   of misconduct in California should misconduct be found in Colorado.  Such evaluations chill the

19   extent of advocacy Foster is willing to undertake for his Colorado clients because it creates

20   exaggerated caution in Foster's legal decision making.   Those evaluations also discourage any

21   offering of legal services in Colorado.  A constitutionally sufficient attorney disciplinary system

22   in California would permit Foster an adequate forum for defending in California any conduct

23   found to be an ethical violation in Colorado.  Lastly, Foster faces actual, rather than probable,

24   financial loss if this Court's jurisdiction is not granted.  Foster has already expended significant

25   time and money initiating this lawsuit and defending against the motions to dismiss.  For every

26   hour of Foster's time that was consumed with this lawsuit, he lost time that could have generated

27   income from his clients.

- 20-

## VI. Justiciability - Foster Has Standing

As defendants point out, standing for federal court purposes requires that the complaint allege an injury in fact, a causal connection between the injury and the conduct complained of, and that it is likely that the injury can be redressed by a favorable decision. Here, the complaint alleges that Foster expended time and money as a result of being held to have committed an ethical violation under in California. Complaint ¶12. The complaint alleges that the proceeding that gave rise to the determination of an ethical violation was conducted under §6049.1 and that Foster could not have that determination reviewed by a judicial authority since the CA Supreme Court has an established administrative practice of summarily denying all petitions for review arising from Disciplinary Panel proceedings. Complaint ¶34. With a favorable decision by this Court determining that the process implemented through §6049.1 violates due process and that Disciplinary Panel proceedings do not adequately protect constitutional rights, further injury to Foster would be redressed. With respect to whether there is a credible threat that the State Bar will bring charges against Foster, see the prior discussion of the duty of the State Bar to prosecute ethical violations by attorneys. In summary, sufficient standing exists in this case to confer jurisdiction on this Court.

## VII. No Grounds Exist For Abstention

Defendants argue that, because the complaint addresses an area that constitutes an important state interest, there is constructively an "ongoing proceeding" and, therefore, under *Younger*, this Court should abstain and require Foster to litigate his constitutional claims in the State Bar Court. Defendants cite no statutory or case law authority for this Court to create a "constructive ongoing proceeding." Further, as defendants point out, to support abstention, *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) requires more than a showing that the complaint implicates an important state interest. Defendants do not argue that they can satisfy the other requirements of *Middlesex* that would require *Younger* abstention in this case.

## VIII. Prior Case Law Is Not Dispositive

- 21 -

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants point to no case where any Court addressed whether the manner in which reciprocal discipline is carried out under §6049.1 violates due process protections.  Rather, defendants argue that there is no constitutional right to "re-litigate" and that this Court and the U.S. Supreme Court utilize reciprocal discipline procedures.  The complaint does not allege that all implementations of reciprocal discipline are unconstitutional, only that the manner in which reciprocal discipline is administered under §6049.1 violates due process.

Defendants point to no case where any Court addressed whether the record that accompanies an attorney's petition for review by the CA Supreme Court is impermissibly compromised by the nature of the proceedings before the Disciplinary Panel.  With respect to cases such as *Hirsh v. Justices of the Supreme Court of State of Cal.*, 67 F.3d 708 (9th Cir. 1995) and *Rosenthal v. Justices of the Supreme Court of State of Cal.*, 910 F.2d 561 (9th Cir. 1990), the complaint alleges they are no longer controlling due to the analysis set forth in *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016).  Complaint ¶36.  Additionally, neither of those cases addresses the constitutionality of §6049.1 or the manner in which the denial of a petition for review by the CA Supreme Court precludes federal question jurisdiction.

The complaint alleges that there is an absence of justification for the procedural scheme applied under §6049.1.  Complaint ¶32.  As *Williams* demonstrates, more than a rational basis and legitimate state purpose are needed when the order that violates an attorney's constitutionally protected rights arises from a secret, confidential judicial process.  Neither the Disciplinary Panel nor the CA Supreme Court ever undertake the balancing of factors as is required for any state procedural scheme under *Mathews v. Eldridge*, 424 U.S. 319 (1976).  "The constitutional validity of the procedural scheme of any statute must satisfy a test that depends upon a balancing of the private interest affected by the official action, the government's interest, and the risk of an erroneous deprivation of the private interest, including the probable value, if any, of additional or substitute procedural safeguards and the burdens such safeguards would entail." *Mathews* 424 U.S. at 334–335.

The first *Mathews* factor is the "private interest" involved in a §6049.1 proceeding.  The

- 22 -

private interest involved is an attorney's right to practice law in California.  As defendants agree, this is not just a mere privilege, but an interest that is afforded the protection of due process.

The second *Mathews* factor is the "risk" that use of the expedited §6049.1 procedures will lead to an "erroneous deprivation" of the right to practice law.  The risk here is significant and plain on its face.  The State Bar bears no burden of proof, is not required to set forth in its charges the specific acts that are alleged to be acts of misconduct, and it is not required to demonstrate that the misconduct would constitute an ethical violation in California.

The final *Mathews* factor considered is the interest of the government, both social and economic.  Since every policy interest of attorney discipline is amply protected when the State Bar initiates an original proceeding, it need never resort to an expedited proceeding.  Without more, the Supreme Court in *Mathews* rejected the argument that the government's financial burdens justified lower due process requirements. "Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard." *Mathews*, 424 U.S. at 348.  It is readily apparent why costs alone cannot be a controlling factor.  Fiscal resources are, by definition, always scarce.

### CONCLUSION

For the reasons set forth above, this Court should:

(i) grant declaratory and injunctive relief barring defendants from initiating expedited reciprocal disciplinary proceedings against Foster in the State Bar Court based on §6049.1 and Rules of Procedure of the State Bar, rules 5.350 to 5.354, since such statutes and rules result in a judicial process that violates Foster's rights to due process related to notice and a full and fair trail, all as protected under the Fourteenth Amendment to the U.S. Constitution.  In the alternative, if injunctive relief is unavailable, this Court should issue declaratory relief resulting in the same due process conclusions;

(ii) grant declaratory and injunctive relief barring defendants from initiating any proceedings against Foster in the State Bar Court since the statutes and rules governing trials in the State Bar Court do not adequately protect Foster's rights to raise constitutional challenges to such statutes

- 23 -

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

1    and rules, where Foster is granted such rights to challenge under the Fourteenth Amendment to
2    the U.S. Constitution.  In the alternative, if injunctive relief is unavailable, this Court should
3    issue declaratory relief resulting in the same due process conclusions;
4    (iii) if this Court determines it cannot hear this case, it should grant Foster the right to amend
5    the complaint so that it contains adequate allegations to support Article III jurisdiction and
6    whatever else the Court deems necessary to support its jurisdiction; and
7    (iv) such other and further relief as justice requires.
8
9    Dated:  June 9, 2017
10                                                      Steven J. Foster
11                                                      Pro se Plaintiff
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's Opposition To Motion To Dismiss Of Defs State Bar Of California, et. al.,
And To Motion To Dismiss Of Defs Justices Of The California Supreme Court

Case No.  4:cv-02122-JSW

# CERTIFICATE OF SERVICE

Case Name: Foster, Steven J. v. State Bar of California, et al.

Case No. 4:17-cv-02122-JSW

I hereby certify that on this 9th day of June, 2017 I did personally serve a true and correct copy of the above and foregoing by placing the same in the U.S. Mail, postage prepaid, and addressed to:

MARK TORRES-GIL
ROBERT G. RETANA
Office of General Counsel
State Bar of California
180 Howard Street
San Francisco, CA 94105-1639
Attorney for Defendants State Bar of California, Judges of the State Bar Court, and David Pasternak

S. MICHELE INAN
Deputy Attorney General of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Attorney for Defendants Justices of the California Supreme Court

I am 18 years of age or older and the plaintiff in the case.

Steven Foster